UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:24-cv-22519-WILLIAMS/GOODMAN

TYRONE GREEN,

    Plaintiff,

v.

CARNIVAL CORPORATION
    Defendant.
_____/

## REPORT AND RECOMMENDATIONS ON MOTION TO DISMISS

Tyrone Green ("Green" or "Plaintiff") was a passenger on the *Carnival Valor*, a Carnival Corporation ("Carnival" or "Defendant") cruise ship. According to his First Amended Complaint ("FAC"),[1] Plaintiff "was pushing his walker ahead of him as he entered the Grand Buffet [restaurant]" when "one of his walker's wheels caught on a

---

[1] Plaintiff filed his FAC [ECF No. 11] in response to Defendant's first motion to dismiss [ECF No. 7]. Federal Rule of Civil Procedure 15(a) permits a party to amend a pleading once "as a matter of course" no later than 21 days after serving it or 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend a pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2); *see also HMD Am., Inc. v. Q1, LLC*, No. 23-21865-CIV, 2023 WL 5831727, at *1 (S.D. Fla. Sept. 7, 2023) ("Under Rule 15, a plaintiff may amend its complaint once as a matter of course within twenty-one days after service of a 12(b) motion."). Here, Carnival's initial motion to dismiss was filed on July 23, 2024 and Plaintiff filed his FAC 14 days later on August 6, 2024. Therefore, Plaintiff amended his pleading within 21 days after service of Carnival's initial dismissal motion.

raised edge, causing [ ] Green, who was holding the walker with both hands, to lose his balance and fall down." [ECF No. 11, ¶¶ 11–12]. He alleges that this

> **section of flooring was badly worn and one of its edges was turned up as though from warping, causing the otherwise smooth and level floor to have a raised edge that constituted a tripping hazard**, as it could easily catch the front of a person's shoe, or in [ ] Green's case–his walker's wheel.

*Id.* at ¶ 13 (emphasis added).

> Plaintiff also alleges that:
>
> 14. The **worn and warped condition of the flooring appeared to [Plaintiff, his wife, and his father-in-law] not to be a new condition** but rather **a condition that had been caused by wear and tear over time**.
>
> 15. **Given the time it takes for flooring to become worn and warped, Carnival had enough time–in the exercise of reasonable care–to have repaired it**, so Carnival must be deemed to have had constructive knowledge of this hazard (assuming Carnival denies actual knowledge of it).

*Id.* at ¶¶ 14–15 (emphasis added). According to Plaintiff, "Carnival breached its duty of care to [ ] Green when it failed to repair this hazard." *Id.* at ¶ 16.

Alleging "bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition," Green sued Carnival. *Id.* at ¶ 18. The FAC alleges a single negligence count for defective flooring and seeks "more than $75,000 in damages, and costs." *Id.* at 4.

Carnival filed a motion to dismiss the FAC, Plaintiff filed a response in opposition,

and Carnival filed an optional reply. [ECF Nos. 16; 18; 19]. United States District Judge Kathleen M. Williams referred the motion to the Undersigned for a report and recommendations. [ECF No. 17].

Carnival's motion asserts two grounds: (1) Plaintiff's Complaint fails to adequately allege that Carnival was on actual or constructive notice of the purported dangerous condition; and (2) Plaintiff fails to properly plead Carnival's duty. [ECF No. 16]. For the reasons outlined below, the Undersigned **respectfully recommends** that Judge Williams **grant in part and deny in part** the motion.

**I.    Factual Background (*i.e.*, Plaintiff's Allegations)**

The FAC alleges that:

7.    [ ] Defendant, Carnival Corporation, owns and operates a cruise ship, the *Carnival Valor*, that sailed from New Orleans, Louisiana, on July 10, 2023, on a five-night Western Caribbean cruise.

8.    [ ] Plaintiff, Tyrone Green, then age 56, and his wife, Betty Green, were fare-paying passengers on that cruise.

9.    At that time and place [ ] Defendant owed [ ] Plaintiff a duty of reasonable care.

10.   On or about the morning of July 15, 2023, while the *Carnival Valor* was docked in navigable waters in New Orleans, Carnival breached its duty of care to Mr. Green by having defective, unsafe flooring at the entrance to the Grand Buffet restaurant.

11.   At that time, [ ] Green was recovering from a knee injury he'd sustained before the cruise, so he brought a walker onto the cruise, and on the morning of July 15, 2023, he was pushing his walker ahead of him as he entered the Grand Buffet.

12.  As [ ] Green entered the Grand Buffet, one of his walker's wheels caught on a raised edge, causing [ ] Green, who was holding the walker with both hands, to lose his balance and fall down.

13.  After [ ] Green's fall, [ ] Green, his wife, and his father-in-law, Nelse Taylor [("Taylor")], looked at the flooring at the spot where the walker's wheel had gotten caught, and they saw that that section of flooring was badly worn and one of its edges was turned up as though from warping, causing the otherwise smooth and level floor to have a raised edge that constituted a tripping hazard, as it could easily catch the front of a person's shoe, or in [ ] Green's case–his walker's wheel.

14.  The worn and warped condition of the flooring appeared to the Greens and to [ ] Taylor not to be a new condition but rather a condition that had been caused by wear and tear over time.

15.  Given the time it takes for flooring to become worn and warped, Carnival had enough time–in the exercise of reasonable care–to have repaired it, so Carnival must be deemed to have had constructive knowledge of this hazard (assuming Carnival denies actual knowledge of it).

16.  Carnival breached its duty of care to [ ] Green when it failed to repair this hazard.

17.  Carnival's breach caused [ ] Green to fall.

18.  When [ ] Green fell, he suffered bodily injury and resulting pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and [ ] Green will suffer these losses in the future.

[ECF No. 11, ¶¶ 7–18].

**II.   Applicable Legal Standards**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint **as true** and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." It does not "require that a plaintiff specifically plead every element of a cause of action." *Balaschak v. Royal Caribbean Cruises, Ltd.*, No. 09-21196, 2009 WL 8659594, at *6 (S.D. Fla. Sept. 14, 2009) *(*citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001), which, in turn, cited Jack H. Friedenthal, et al., Civil Procedure, § 5.7 (2d ed. 1993) for the view that "[w]hat the pleader

5

need not do is worry about the particular form of the statement or that it fails to allege a specific fact to cover every element of the substantive law involved.").

### III. Analysis

As noted above, Carnival seeks to dismiss Plaintiff's FAC on two grounds: (1) Plaintiff's Complaint fails to adequately allege that Carnival was on actual or constructive notice of the purported dangerous condition; and (2) Plaintiff fails to properly plead Carnival's duty. [ECF No. 16]. The Undersigned will address these arguments in turn.

#### A. Actual or Constructive Knowledge

To properly plead a claim for negligence under the general maritime law of the United States, a plaintiff must allege that: "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012).

To survive a motion to dismiss, a plaintiff must plead sufficient facts to support each element of his direct liability negligence claim (as opposed to vicarious liability), including that the defendant had "actual or constructive notice of [a] risk-creating condition," at least where the risk is one commonly encountered on land and not clearly linked to nautical adventure. *See Holland v. Carnival Corp.*, 50 F.4th 1088, 1094 (11th Cir. 2022); *Newbauer v. Carnival Corp.*, 26 F.4th 931, 935 (11th Cir. 2022), *cert. denied*, 143 S. Ct. 212 (2022).

6

In *Newbauer*, the Eleventh Circuit affirmed Senior United States District Judge Robert N. Scola, Jr.'s order granting Carnival's motion to dismiss, finding that the plaintiff failed to provide any factual allegations to support her claim that Carnival had actual or constructive notice of the hazard which allegedly caused her injury. The plaintiff cruise-passenger alleged she was injured when she slipped and fell on a wet, slippery transitory substance on the cruise ship's Lido deck. The passenger filed suit against Carnival, alleging that it negligently failed to maintain the area and/or warn her of the condition.

In dismissing Newbauer's claims, Judge Scola determined that "[n]one of the [p]laintiff's allegations suggest[ed] Carnival was on constructive notice, let alone actual notice, of the hazard complained of because the [p]laintiff's complaint fail[ed] to satisfy applicable federal pleading standards under Federal Rule 8 and the *Iqbal/Twombly* standard." *Newbauer v. Carnival Corp.*, No. 20-23757-CIV, 2021 WL 723164, at *2 (S.D. Fla. Feb. 24, 2021), *aff'd*, 26 F.4th 931 (11th Cir. 2022). In affirming the District Court's decision, the Eleventh Circuit similarly concluded that the passenger "failed to include any **factual** allegations that were sufficient to satisfy the pleading standard set forth in *Iqbal* and *Twombly* such that it [was] facially plausible that Carnival had actual or constructive notice of the dangerous condition." *Newbauer*, 26 F.4th at 935 (emphasis added).

In *Holland*, the Eleventh Circuit again reaffirmed the principle that, "to survive [a] motion to dismiss" the plaintiff must "plead sufficient facts to support each element of

his claim, including that [the defendant] had actual or constructive notice about the dangerous condition." 50 F.4th at 1095. In *Holland,* the plaintiff cruise-passenger filed suit against Carnival, alleging he was injured when he slipped and fell while descending a glass staircase in a highly trafficked area of the ship. Holland alleged facts that made it *possible* that the cruise line had notice of the allegedly dangerous condition, but he failed to provide factual allegations that *plausibly* suggested the cruise line had notice, actual or constructive, of the dangerous condition. "Simply put, Holland's allegations [did] not cross the line from possibility to plausibility of entitlement to relief." *Id*. at 1096 (citing *Iqbal*, 556 U.S. at 678).

The Eleventh Circuit acknowledged its rules about the importance of properly alleging notice in personal injury lawsuits against cruise ships in *Patton v. Carnival Corp.*, No. 22-13806, 2024 WL 1886504 (11th Cir. Apr. 30, 2024) (*per curiam*) (affirming order dismissing trip-and-fall complaint arising from an improperly affixed metal threshold extending across a highly trafficked hallway). Thus, the pleading hurdles highlighted in *Newbauer*, *Holland*, and *Patton* remain vital.

Here, Plaintiff's FAC alleges that:

12.     As [ ] Green entered the Grand Buffet, one of his walker's wheels **caught on a raised edge**, causing [ ] Green, who was holding the walker with both hands, to lose his balance and fall down.

13.     After [ ] Green's fall, [ ] Green, his wife, and his father-in-law [ ] looked at the flooring at the spot where the walker's wheel had gotten caught, and **they saw that that section of flooring was badly worn and one of its edges was turned up as though from warping, causing the otherwise**

8

**smooth and level floor to have a raised edge that constituted a tripping hazard**, as it could easily catch the front of a person's shoe, or in [ ] Green's case–his walker's wheel.

14. **The worn and warped condition of the flooring appeared to the Greens and to [Plaintiff's father-in-law] not to be a new condition but rather a condition that had been caused by wear and tear over time**.

15. **Given the time it takes for flooring to become worn and warped, Carnival had enough time–in the exercise of reasonable care–to have repaired it**, so Carnival must be deemed to have had constructive knowledge of this hazard (assuming Carnival denies actual knowledge of it).

[ECF No. 11, ¶¶ 12–14 (emphasis added)].

The allegations in the FAC are distinguishable from those pled in *Newbauer*, *Holland*, and *Patton*. The FAC alleges that, at the very least, Carnival had constructive notice of the tripping hazard (*i.e.*, the "raised edge" on an "otherwise smooth and level floor"). *Id.* at ¶ 13. Moreover, Plaintiff alleges a reason for Carnival to have known of this tripping hazard because it appeared to be "a condition that had been caused by wear and tear over time" and "[g]iven the time it takes for flooring to become worn and warped, Carnival had enough time–in the exercise of reasonable care–to have repaired it." *Id.* at ¶¶ 14–15. These allegations are sufficient to plead that Carnival was on constructive notice (prior to Plaintiff's incident) of a dangerous condition onboard the vessel.

In *Newbauer*, Judge Scola granted Carnival's motion to dismiss, finding the complaint's allegations concerning "the presence of [a] liquid or wet, slippery or transitory substance" insufficient to support a contention that the cruise line had notice:

9

> **As [pled], it is impossible for the Court to tell if the hazardous condition the [p]laintiff complains of was present for five seconds, five minutes, or five hours**. While the [p]laintiff's complaint makes clear it is *possible* that Carnival was on notice, the [p]laintiff's complaint does not state a claim that is plausible on its face sufficient to survive a motion to dismiss.

2021 WL 723164, *3 (italics in original; bold emphasis added).

*Holland* involved the presence of a "'wet or slippery transient foreign substance' [on] . . . glass stairs where the [p]laintiff slipped." *Holland v. Carnival Corp.*, No. 20-21789-CIV, 2021 WL 86877, at *2 (S.D. Fla. Jan. 11, 2021), *aff'd*, 50 F.4th 1088 (11th Cir. 2022). There, the plaintiff attempted to show that:

> Carnival must have been aware of the danger on its ship because of "the frequent nature of prior slip and fall incidents on the staircase" or alternatively because the stairs in question were in a highly trafficked area; near shops, a casino and dining areas; and because Carnival employees were manning nearby shops for at least four hours with an unobstructed view of the stairs. The [p]laintiff also suggest[ed] that compliance with industry regulations show Carnival was on notice that the stairs in question posed a danger to the [p]laintiff.

*Id.*

Judge Scola found that none of these allegations "suggest[ed] Carnival was on constructive notice, let alone actual notice, of the hazard on the stairs in question." *Id.* He noted that the plaintiff failed to allege any facts supporting his conclusory allegation of prior slip and fall incidents on this staircase. He also noted that:

> the fact that an event is foreseeable, *i.e.*[,] that a "wet or slippery transient foreign substance" could end up on a highly trafficked staircase near shops and dining areas is foreseeable, but that does not mean Carnival was on actual or constructive notice of that condition. **While constructive notice can be plead by showing a condition existed for a long enough period of**

> **time that the shipowner must have known of the danger, the [p]laintiff provides no factual allegations at all to support a conclusion that Carnival should have known of the "wet or slippery transient foreign substance" on the stairs between deck 4 and 5**. The totality of [p]laintiff's allegations is that certain of [ ] Defendant's employees may have been in a position to see that there was a liquid on the stairs in question and the stairs are in a high traffic area of the ship.

*Id.* at *3 (emphasis added). Lastly, Judge Scola "fail[ed] to see how industry regulations [were] at all germane to whether or not [ ] Defendant was on notice of a 'wet or slippery transient foreign substance' on a staircase of [ ] Defendant's vessel." *Id.*

More recently, in *Patton*, Judge Scola granted Carnival's motion to dismiss, where a passenger "tripped over a 'metal threshold' that was not flush with the floor." *Patton v. Carnival Corp.,* No. 22-21158-CIV, 2022 WL 7536256, at *1 (S.D. Fla. Oct. 13, 2022), *aff'd*, No. 22-13806, 2024 WL 1886504 (11th Cir. Apr. 30, 2024). The plaintiff sought to support her claim that Carnival had actual or constructive knowledge of this condition by:

> (1) [including] a new, undated photograph (alongside a similar, previously pleaded photograph) of the threshold at issue which [the plaintiff] ple[d] was taken "at or shortly after the time [she] tripped and fell"; (2) an argument by inference that there [was] "a reasonable inference that the gap had developed over time and had been present for some time" and therefore Carnival's employees must have seen the raised metal threshold before the incident because they "routinely do clean the floors in the area"; and (3) minutes from multiple "safety meetings" on the ship indicate[d] that "Carnival was aware of the tripping hazard posed by damaged threshold[s,]" generally.

*Id.* at *2 (record citations omitted).

Judge Scola was unpersuaded by the photographs because "Patton [did] not even attempt to plead that the photographs must represent the state of the metal threshold

11

before the time of the incident." *Id*. Thus "[t]he photographs . . . fail[ed] to allege the state of the threshold *at the time of the incident*, let alone the threshold's state for an unidentified amount of time before the incident." *Id.* (emphasis in original). He also rejected the plaintiff's "common sense" argument "that Carnival employees would have seen the alleged tripping hazard, as they routinely clean the floors in the area once a day," *id*. (internal quotation marks omitted), for the reasons stated in an earlier dismissal order.[2] Lastly, Judge Scola noted that "the [safety] minutes address[ed] only generalized concerns" and "[were] not substantially similar in nature to the allegations [in Patton's amended complaint]." *Id.*

The Eleventh Circuit affirmed Judge Scola's ruling, finding that the plaintiff's constructive knowledge argument "f[e]ll[ ] short for the same reason it did in *Holland*. *Patton*, 2024 WL 1886504, at *2. As the appellate court explained:

> Here, too, [the plaintiff] ha[d]n't plausibly alleged that the dangerous condition existed for a "sufficient length of time" to impute notice to Carnival because **the complaint lack[ed] any plausible "allegation as to how long" the dangerous condition existed**. *See Holland*, 50 F.4th at 1096. Likewise, **she hasn't plausibly described the dangerous condition "in a way that would suggest" it had been there "for a sufficient period of time."** *See id.* **The photographs don't help her because, as the district court explained, [the plaintiff] "does not even attempt to plead that the**

---

[2] Namely that, "at most, Patton complain[ed] of a metal threshold that was uneven with the floor by inches, if not less. Therefore, absent any allegations that Carnival employees would have plausibly seen the metal threshold and recognized its potential danger, Patton ha[d] not sufficiently alleged notice." *Patton v. Carnival Corp.*, No. 22-21158-CIV, 2022 WL 2982699, at *2 (S.D. Fla. July 28, 2022).

12

> **photographs . . . represent the state of the metal threshold before the time of the incident**."
>
> ***
>
> [S]he contends that, although the photos attached to the complaint were taken "at or shortly after" she fell, the "reasonable inference[ ]" to draw is that "the dangerous condition of the threshold was due to wear and developed over a considerable time, much more than just a few minutes, hours or even days." **But there's not enough in the complaint or the attachments for us to conclude that this inference is reasonable and not an unwarranted deduction**. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in [the] [p]laintiff's favor, but we are not required to draw [the] plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [the] plaintiff's allegations." (cleaned up)). **[The plaintiff] never explains (and it's not self-evident) what in the photos or complaint shows that it's a reasonable inference that the gap beneath the metal threshold emerged gradually over the course of days due to wear and tear**.

*Id.* at *3 (emphasis added).

Here, unlike the *Newbauer*, *Holland*, and *Patton* plaintiffs, Plaintiff *does* plead facts to support that Carnival had constructive knowledge of the alleged tripping hazard (the "raised edge" on an "otherwise smooth and level floor"). [ECF No. 11, ¶ 13]. Plaintiff alleges that the "condition [ ] had been caused by wear and tear over time" and "[g]iven the time it takes for flooring to become worn and warped, Carnival had enough time–in the exercise of reasonable care–to have repaired it," *id.* at ¶¶ 14–15, and thus Carnival should have known of the raised edge in the flooring.

*Newbauer* and *Holland* involved wet, slippery, *transient* foreign substances, which

by definition are not permanent. *Patton* involved a metal threshold but "[the plaintiff] d[id] not even attempt to plead that the photographs must represent the state of the metal threshold before the time of the incident." *Patton*, 2022 WL 7536256, at *2.

Here, Plaintiff alleges that the flooring was in a "worn and warped condition" "caused by wear and tear over time" and that "the spot where the walker's wheel had gotten caught . . . was badly worn and one of its edges was turned up as though from warping, causing the otherwise smooth and level floor to have a raised edge." [ECF No. 11, ¶¶ 13–14].

The Undersigned finds that the allegations in the FAC are more akin to *Hager v. Royal Caribbean Cruises, Ltd.*, where:

> [the plaintiff] allege[d] that while she was a passenger onboard [a cruise ship], she tripped and fell down a staircase, fracturing her left wrist and ankle. **[She] allege[d] that the nosing and anti-skid strips on the stairs were so worn and damaged that the steps were unlevel and protruding, causing her to lose her balance and fall while descending the staircase**. [She also] allege[d] that Royal Caribbean had actual or constructive notice of the dangerous condition of the steps, but failed to either correct the steps or warn [the plaintiff] of the dangerous condition.

No. 21-CV-20802, 2022 WL 1658830, at *1 (S.D. Fla. May 25, 2022) (record citations omitted; emphasis added).

The defendant moved for summary judgment on multiple grounds, including that "[the plaintiff] ha[d] not provided evidence showing Royal Caribbean had notice of the dangerous condition[.]" *Id.*

The district judge rejected this argument, explaining that:

> [the plaintiff] ha[d] adduced sufficient evidence that Royal Caribbean had constructive notice of the potentially dangerous condition of the staircase. First, **based on Dr. Lederer's description of the steps in his expert report, a reasonable jury could conclude that the anti-slip tape had been worn and damaged "for a sufficient period of time to invite corrective measures."** Significantly, **the condition that [the plaintiff] alleges caused her to fall—excessively high anti-skid tape lacking adequate abrasive properties—is not a transitory or foreign condition on the staircase that can come and go. Rather, the anti-slip tape is a consistently present feature of the steps. Accordingly, the worn-down nature of the anti-skid tape suggests that the subject steps were hazardous for a sufficient period of time to infer constructive notice.** Put more simply, **if there was enough time for the anti-skid tape to reach a point where it had no "detectable abrasive properties," there was enough time to infer that Royal Caribbean should have noticed the hazardous condition and corrected it**.
>
> Second, [the plaintiff] has presented evidence that in the two years prior to her fall, the staircase was the subject of multiple work orders requesting repairs to the anti-slip tape. These work orders present a factual issue on constructive notice, an issue better determined at trial. *See Rodgers v. Costa Crociere, S.p.A.*, [No. 08-60233-CIV-DIMITROULEAS,] 2009 WL 10666976, at *5 (S.D. Fla. July 7, 2009) (denying summary judgment because a jury could find constructive notice based on work orders for a staircase submitted within the two years prior to plaintiff's accident), *aff'd*, 410 F. App'x 210 (11th Cir. 2010).
>
> **To recap, through both the description of the staircase in Dr. Lederer's expert report and the work orders demonstrating the repeated need to repair the anti-slip tape on the steps**, Hager has presented evidence suggesting that Royal Caribbean knew or should have known that the subject staircase presented a dangerous condition.

*Id.* at *4 (record citations omitted).

To be sure, *Hager* was decided at the summary judgment stage and thus, the *Hager* plaintiff had the benefit of her expert's report and work orders. Nonetheless, at the

15

pleading stage, the Undersigned finds that Plaintiff's allegations of a "raised edge" on an "otherwise smooth and level floor" "caused by wear and tear over time" are sufficient to satisfy the pleading standard set forth in *Iqbal* and *Twombly*. Plaintiff has alleged plausible facts that Carnival had constructive notice of the dangerous condition. Accordingly, the Undersigned **respectfully recommends** that Judge Williams **deny** Carnival's motion on this ground.

### B. Duty of Reasonable Care Under the Circumstances

Defendant also seeks to dismiss the FAC for failure to properly plead Carnival's duty. [ECF No. 16, pp. 8–11]. It notes that "under federal maritime law, the duty of care owed by a cruise operator to its passengers is ordinary reasonable care under the circumstances." *Id.* at 8 (citing *Thompson v. Carnival Corp.*, 174 F.Supp.3d 1327, 1340 (S.D. Fla. 2016) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989)).

Plaintiff's response to this argument is a single paragraph, devoid of any legal citations:

> Carnival's second argument isn't very clear. It seems as though Carnival is quarreling with Green's description of Carnival's duty of care as "reasonable care," rather than "reasonable care under the circumstances." **But there is no difference between those two statements of the duty of care: "Under the circumstances" adds nothing to "reasonable care," for reasonability, by itself, implies that one must look at the actor's circumstances in determining whether his or her actions are reasonable. And the general maritime law uses both phrases interchangeably.** And Carnival's argument that Green has somehow alleged a "heightened or special duty of care" (Def.'s Mot Dismiss 9–10) is just not supported by anything alleged in the Complaint. It is Carnival's Motion to Dismiss—not the Plaintiff's Complaint—that is threadbare. It should be denied.

[ECF No. 18, pp. 2–3 (emphasis added)]. Although Plaintiff claims that "the general maritime law uses both phrases interchangeably," he does not cite a single case. *Id.* at 2.

When a litigant raises an argument only generally and fails to offer specific factual contentions or fails to support the argument with legal authority, a court may summarily reject the argument. *United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a "perfunctory and underdeveloped argument" with no citation to legal authority and collecting cases); *Chavez v. Sec. Fla. Dept. of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("a district court cannot be expected to do a petitioner's work for him"); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Here, Carnival cites binding, Eleventh Circuit case law supporting its argument that "the duty of care owed by a cruise operator to its passengers is ordinary reasonable care under the circumstances." [ECF No. 21, pp. 3–4 (citing *Keefe*, 867 F.2d at 1322; *Chaparro*, 693 F.3d 1333; *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275 (11th Cir. 2015); *Yusko v. NCL (Bah.), Ltd.*, 4 F.4th 1164 (11th Cir. 2021))]. Plaintiff cites *no* legal support for its position that there is no difference between "reasonable care" and "reasonable care under the circumstances." Accordingly, the Undersigned **respectfully recommends** that Judge Williams **grant** Carnival's motion on this ground.

## IV. Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that Judge Williams **grant in part** Carnival's motion to dismiss the FAC [ECF No. 11], **without prejudice** and with **leave** to amend so that Plaintiff may properly plead Carnival's duty.

## V. Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, November 5, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record